■ U.S. UNDERWRITERS INSURANCE COMPANY, Appellant-Respondent, v ROBERT CARSON, Doing Business as MARIA's TAVERN, et al., Respondents-Appellants, et al., Defendants. [853 NYS2d 700]—

Malone Jr., J.

Defendant Robert Carson is the owner of a bar known as Maria's Tavern located in the Village of Watkins Glen, Schuyler County. On the evening of April 17, 2002, while Carson was on vacation in Florida, Catrina Decker was bartending and served alcoholic beverages to Timothy Cooke and some of his friends. During the early morning hours of April 18, 2002, approximately

one hour after Cooke had left the bar, he was killed in an automobile accident in Tompkins County when the vehicle he was driving struck a vehicle driven by Gerald Check. Check was also killed in the accident, but his father, who was a passenger in the car, survived.

Later that morning at approximately 6:30 A.M., Decker was informed by her husband, a Watkins Glen police officer, of the fatal accident involving Cooke. Later that day, she was contacted by an investigator with the Schuyler County Sheriff's Department and complied with his request to give a statement about Cooke's whereabouts and conduct the night before. Shortly thereafter, she advised Carson, who was still in Florida, of the fatal accident and that she had given a statement to police. She had a further conversation with Carson about the incident when he returned from Florida about a week later.

Carson did not hear anything else about the accident until January 9, 2003, when he received a letter from Ransom Reynolds, an attorney for Check's estate, advising of a potential legal claim. Carson promptly notified his insurance agent, and the letter was eventually forwarded to plaintiff on February 21, 2003. Meanwhile, Reynolds had learned through his own investigation that plaintiff was Carson's liquor liability insurance carrier and he notified plaintiff by letter dated March 19, 2003 of the potential claim. Plaintiff issued two letters, one on March 28, 2003 and a second on April 7, 2003, both disclaiming coverage based upon Carson's failure to provide plaintiff with notice of the injury forming the basis for the claim as soon as practicable as required by the policy.

Plaintiff then commenced the instant action against Carson, Check's estate and Check's family members seeking a judgment declaring that it had no duty to provide either a defense or indemnification for any personal injuries or wrongful death resulting from the accident. Following joinder of issue, plaintiff moved, among other things, for summary judgment. Carson cross-moved for summary judgment, as did Check's estate. Carson also sought a ruling that plaintiff's disclaimer was untimely. Supreme Court found that questions of fact existed as to the timeliness of the notices provided by Carson and Check's estate, but ruled that plaintiff's disclaimer was not untimely. Consequently, it denied the motion and cross motions, resulting in these cross appeals.

We turn first to plaintiff's contention that Carson failed as a matter of law to comply with the policy provisions requiring him to notify plaintiff "as soon as practicable" of any injury that might result in a claim. We have observed that " '[w]here a

policy of liability insurance requires that notice of an occurrence be given "as soon as practicable," such notice must be accorded the carrier within a reasonable period of time' " (*Klersy Bldg. Corp. v Harleysville Worcester Ins. Co.*, 36 AD3d 1117, 1118 [2007], quoting *Great Canal Realty Corp. v Seneca Ins. Co., Inc.*, 5 NY3d 742, 743 [2005]). An insured's delay in providing timely notice, however, may be excused "where the insured has 'a good-faith belief in nonliability,' provided that belief is reasonable" (*Great Canal Realty Corp. v Seneca Ins. Co., Inc.*, 5 NY3d at 743, quoting *Security Mut. Ins. Co. of N.Y. v Acker-Fitzsimons Corp.*, 31 NY2d 436, 441 [1972]; *see* Insurance Law § 3420 [a] [4]). "[T]he focus of such an inquiry is its reasonableness under the circumstances, not whether the insured should have anticipated the possibility of a lawsuit" (*Spa Steel Prods. Co. v Royal Ins.*, 282 AD2d 864, 865 [2001]). Significantly, the question of reasonableness is generally a question of fact for a jury (*see Klersy Bldg. Corp. v Harleysville Worcester Ins. Co.*, 36 AD3d at 1119; *Hudson City School Dist. v Utica Mut. Ins. Co.*, 241 AD2d 641, 642 [1997]).

The insured, Carson, was first aware of the fatal accident when Decker called him the day after it happened. During this conversation, Decker indicated that she had given a written statement to the police, but was not provided with any details concerning the accident or if alcohol was involved. She further told Carson that Cooke came to the bar at 10:30 P.M. and stayed until 12:45 A.M., during which time she served him four or five beers and one shot of rum. She stated that Cooke did not appear intoxicated when he left the bar and appeared to be on foot. When he returned from Florida approximately one week after the accident, Carson had a brief conversation with Decker and reviewed her written statement, but he was never questioned by law enforcement officials and did not hear any media reports about the accident. In fact, he did not hear anything else about the accident until approximately 10 months later when he received the letter from Reynolds, which he promptly forwarded to his insurance agent.* In our view, the foregoing clearly raises questions of fact concerning the reasonableness of Carson's actions in waiting to notify plaintiff that he might be subject to liability due to the fatal accident. Accordingly, we decline to disturb Supreme Court's ruling on this issue.

Moreover, we reject plaintiff's contention that the notice provided to plaintiff by Check's estate was legally irrelevant.

---

* While plaintiff did not actually receive notice of the claim until more than a month later on February 21, 2003, such delay was evidently attributable to the actions of Carson's insurance agent.

Notwithstanding the timeliness of the notice given by an insured, an injured party has an independent right to give notice so as to preserve his or her right to proceed against an insurer (*see General Acc. Ins. Group v Cirucci*, 46 NY2d 862, 863-864 [1979]; *Allstate Ins. Co. v Marcone*, 29 AD3d 715, 717 [2006], *lv dismissed* 7 NY3d 841 [2006]; *see also* Insurance Law § 3420 [a] [3]). "Significantly, the notice required of an injured party to an insurer is measured less rigidly than the notice required of an insured . . . 'since what is reasonably possible for the insured may not be reasonably practical for the injured person'" (*GA Ins. Co. of N.Y. v Simmes*, 270 AD2d 664, 666 [2000], quoting *Jenkins v Burgos*, 99 AD2d 217, 221 [1984]). Here, the record reveals that after being retained by Check's estate, Reynolds undertook a thorough investigation to ascertain the circumstances of the accident and the potentially responsible parties. Once he concluded that Carson bore potential liability, he promptly sent Carson a letter on January 7, 2003 advising him of the same. In addition, Reynolds contacted various insurance companies with whom Carson had coverage before he determined on March 3, 2003 that plaintiff wrote the policy covering the claim. Only a few weeks later, on March 19, 2003, Reynolds sent plaintiff written notification of the claim. As with the notice provided by Carson, we find that the reasonableness of the actions of Check's estate in providing notice also present a question of fact (*see e.g. Allstate Ins. Co. v Marcone*, 29 AD3d at 717; *GA Ins. Co. of N.Y. v Simmes*, 270 AD2d at 666-667). Therefore, Supreme Court properly denied the motion and cross motions for summary judgment on the notice issue.

Contrary to the assertion of Carson and Check's estate, we do not find that plaintiff's disclaimer was untimely. Insurance Law § 3420 (d) requires an insurer to provide a written disclaimer "as soon as is reasonably possible" as "measured from the time when the insurer learns of sufficient facts upon which to base the disclaimer" (*McEachron v State Farm Ins. Co.*, 295 AD2d 685, 685 [2002]). The record discloses that plaintiff sent its disclaimer letter to Carson on March 28, 2003, the day that it received the full report of its investigator, which was completed about a month after plaintiff received Carson's notice. A follow-up letter correcting a minor technical defect was sent on April 7, 2003. Although plaintiff did not send a disclaimer letter to Check's estate until May 12, 2003, its notice was not filed until late March 2003 and, in any event, as of April 11, 2003 it was already aware of the disclaimer issued to Carson. Under these circumstances, we cannot conclude that plaintiff's disclaimer was untimely.

We have considered plaintiff's remaining arguments and find them to be unavailing.

Peters, J.P., Carpinello, Rose and Kane, JJ., concur. Ordered that the order is affirmed, without costs.